MARK E. FERRARIO, ESQ.
Nevada Bar No. 1625
CHRISTOPHER R. MILTENBERGER, ESQ.
Nevada Bar No. 10153
**GREENBERG TRAURIG, LLP**
3773 Howard Hughes Parkway, Suite 400 North
Las Vegas, Nevada  89169
Telephone:   (702) 792-3773
Fax:              (702) 792-9002
Email: ferrariom@gtlaw.com
           miltenbergerc@gtlaw.com

DANIEL R. WARREN, ESQ. *pro hac vice*
SCOTT C. HOLBROOK, ESQ. *pro hac vice*
DANTE MARINUCCI, ESQ. *pro hac vice*
**BAKER & HOSTETLER LLP**
Key Tower
127 Public Square, Suite 2000
Cleveland, OH 44114-1214
Telephone:   (216) 621-0200
Fax:              (216) 696-0740
Email: dwarren@bakerlaw.com
           sholbrook@bakerlaw.com
           dmarinucci@bakerlaw.com

ANN YACKSHAW, ESQ. *pro hac vice*
**BAKER & HOSTETLER LLP**
200 Civic Center Drive, Suite 1200
Columbus, Ohio 43215
Telephone: 614.228.1541
Email: ayackshaw@bakerlaw.com

*Attorneys for Defendants Whole Foods Market, Inc.; Whole Foods Market Group, Inc.; Mrs. Gooch's Natural Food Markets, Inc., and WFM Southern Nevada, Inc.,*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| LYNN MARIE COUSINO, and all similarly situation individuals,<br><br>                          Plaintiffs,<br><br>vs.<br><br>WHOLE FOODS MARKET, INC.; WHOLE FOODS MARKET GROUP, INC.; MRS. GOOCH'S NATURAL FOOD MARKETS, INC., AND WFM SOUTHERN NEVADA, INC.,<br><br>                          Defendants. | Case No.: 2:17-cv-2531-JAD-PAL<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** |

## I. PLAINTIFF HAS NO CLAIM UNDER FCRA.

### A. FCRA Does Not Apply to a Grocery Store.

Plaintiff argues that the Fair Credit Reporting Act applies to Whole Foods because it submits payment card information to its customers' banks in order to get paid. (Opp. Br. 8.) This, of course, would make *every* retail business that accepts payment cards subject to FCRA, because all retailers process payment card transactions in this manner.

FCRA was never intended to be used this way. "FCRA was the product of congressional concern over abuses in the credit reporting industry." *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995). Thus, the statute is carefully aimed at credit reporting agencies or other entities that are in the business of assembling and evaluating consumer credit information and that are specifically paid for this service. *See D'Angelo v. Wilmington Med. Ctr., Inc.*, 515 F. Supp. 1250, 1253 (D. Del. 1981) (FCRA was "directed at firms which, as a regular part of their business aggregate credit information on individual consumers, prepare credit evaluations, and report those evaluations to persons or firms who rely thereon in making decisions about extending consumer credit or offering employment"). Indeed, FCRA specifically exempts companies like Whole Foods that obtain credit information through their "transactions or experiences" with consumers. 15 U.S.C. § 1681a(d)(2)(A)(i).

#### 1. Whole Foods Sells Groceries, Not Credit Information.

FCRA does not apply here because Whole Foods is not a "consumer reporting agency," which the statute defines as an entity that assembles and furnishes information "for monetary fees, dues, or on a cooperative nonprofit basis." 15 U.S.C. § 1681a(f). Every court to interpret this language has agreed that, for FCRA to apply to a given company, it must be paid specifically for the service of assembling or evaluating credit information.

In *Tierney v. Advocate Health & Hospitals Corp.*, 797 F.3d 449, 452 (7th Cir. 2015), for example, the plaintiff argued (much like plaintiff here) that FCRA should apply to a hospital that assembled its patients' credit information "in order to get paid." *Id.* Rejecting this argument, the Seventh Circuit explained that the hospital was paid "*for health care services* that its physicians have rendered," not for the consumer credit information it submitted along with its request for

payment. *Id.* (emphasis in original).

Similarly here, Whole Foods (and every other retailer that accepts payment cards) is paid for the groceries and other products it sells to its customers—not for assembling and evaluating consumer credit information. In fact, plaintiff admits that "Whole Foods' entire business model revolves around swapping consumer cash *for retail goods*." (Opp. Br. 8 (emphasis added).) Consequently, FCRA has no application here.[1]

Plaintiff glibly dismisses the thirteen cases Whole Foods cited on this point as "apropos of nothing." (Opp. Br. 10.) But every one of those cases refused to apply FCRA to entities that were not specifically paid for the service of assembling and furnishing credit information—and several of those cases found the plaintiff's argument to be "frivolous." *See, e.g., Mirfasihi v. Fleet Mortg. Corp.*, 551 F.3d 682, 686 (7th Cir. 2008) ("[T]he claim that [mortgage company] violated the Fair Credit Reporting Act has no possible merit, and in fact is frivolous."); *Rush v. Macy's New York, Inc.*, 775 F.2d 1554, 1558 (11th Cir. 1985) (same and imposing sanctions).

Moreover, plaintiff does not back up her often-rejected thesis with a single case of her own. The only case plaintiff does cite—*Owner-Operator Indep. Driver Ass'n, Inc. v. Usis Commercial Servs., Inc.*, 410 F. Supp. 2d 1005 (D. Colo. 2005)—completely misses the mark. First, the defendants in that case, unlike Whole Foods, were in fact paid a fee for the service of assembling their customers' credit information. *Id.* at 1010. Moreover, plaintiff neglects to mention that the Tenth Circuit ultimately rejected the FCRA claim in that case because the defendants had obtained the credit information as part of their first-hand experiences with their customers. *Owner-Operator Indep. Drivers Ass'n, Inc. v. USIS Commercial Servs., Inc.*, 537 F.3d 1184, 1191-92 (10th Cir. 2008). (See Part I(A)(2) below.)

Plaintiff correctly points out that FCRA is not limited to the "big three" national consumer credit reporting agencies. (Opp. Br. 7.) But this does not change the fact that, for FCRA to apply, an entity must be paid to conduct credit reporting activities. Thus, the Federal

---

[1] Far from being paid to assemble credit information, Whole Foods itself must pay an "interchange" fee to the customer's bank each time a payment card purchase is made. These interchange fees are described in the website cited in plaintiff's brief. (Opp. Br. 3 n.9.)

2

Trade Commission decision plaintiff cites, *In re ACRAnet, Inc.*, 2011 WL 479886 (FTC Feb. 3, 2011), is inapposite. In *ACRAnet*, the defendant's core business was assembling and selling credit information from the big three consumer reporting agencies as part of a single, combined report. *Id.* at *1. Whole Foods, in stark contrast, sells groceries.

### 2. Whole Foods Does Not Assemble "Consumer Reports."

FCRA applies only to the assembly of "consumer reports," and it excludes from this definition "information solely as to transactions or experiences between the consumer and the person making the report." 15 U.S.C. § 1681a(d)(2)(A)(i). Thus, information collected as part of a transaction between a retailer and its customer is specifically excluded from FCRA, and plaintiff's FCRA claim must be dismissed for this reason as well. (*See* authorities cited at Br. 8.)

Straying far from her complaint, plaintiff argues that this exclusion does not apply because, in addition to the payment card information it collects, Whole Foods also assembles the banks' approvals of payment card transactions, which do not come directly from the customer. (Opp. Br. 11.) No court has taken this position with respect to a retailer's processing of credit card transactions, and for good reason.

First, the mere fact that a third party—here the bank approving the customer's payment card transaction—is involved in the direct interaction between the merchant and the customer does not negate the "transactions or experiences" exception. *See Owner-Operator*, 537 F.3d at 1192 ("That the experiences of the [merchant] may involve third parties does not mean they are no longer the first-hand experiences of the [merchant].") Whole Foods receives a bank's approval of a transaction within seconds of receiving the customer's payment card information. Thus, both pieces of information relate "solely . . . to transactions or experiences between the consumer and the person making the report." 15 U.S.C. § 1681a(d)(2)(A)(i).

Second, information must be communicated for a specified FCRA purpose to be considered a "consumer report" under the statute. *See* 15 U.S.C. § 1681a(d)(1)(A)-(C). Applicable communications are those made (1) to determine eligibility for credit or insurance, (2) for employment purposes, or (3) for "any other purpose authorized under § 1681b." *Id.* But Whole Foods's "communication" of banks' approvals of payment card transactions does not fit

3

any of these categories.

Plaintiff does not argue, nor can she, that Whole Foods communicated the banks' approvals to determine a consumer's eligibility for credit or insurance, or for employment purposes. Instead, plaintiff argues under category 3 that Whole Foods's communication was for some "other purpose" authorized under § 1681b—namely, pursuant to the "written instructions of the consumer to whom it relates." (Opp. Br. 11 (quoting 15 U.S.C § 1681b(a)(2)).) But plaintiff can cite to no "written instructions" that she and other customers gave to Whole Foods to aggregate and submit their bank approvals for the purpose of getting paid.

Plaintiff claims that "the consumer's 'written instructions' are consumer's access of the Whole Foods payment processing system to purchase retail goods." (Opp. Br. 11.) But instructions implied through conduct—including even through verbal authorization—do not suffice. *See Chex Sys., Inc. v. Direct Horizon Bus. Dev. Grp., Inc.*, 2016 WL 9526559, at *4 (M.D. Fla. June 2, 2016) ("[V]erbal authorization does not constitute a permissible purpose because § 1681b(a)(2) only applies to written instructions"). And even if an unwritten instruction were enough, plaintiff cannot plausibly contend that using a payment card constitutes an instruction as to the detailed technical processes Whole Foods should follow to obtain payment from her bank.

Congress included the "transactions or experiences" exception so that "retail stores, hospitals, present or former employers, banks, mortgage servicing companies, credit unions, or universities" are not swept within the scope of FCRA simply because they deal, as part of their non-credit reporting business, with consumer information. *Owner-Operator*, 537 F.3d at 1192 (citing 16 C.F.R. pt. 600, app. D § 603(d)(7)(A)). This Court should reject plaintiff's invitation to expand FCRA liability to Whole Foods and hundreds of thousands of other merchants who do nothing more than accept payment cards for their goods and services.

### B. Whole Foods Did Not "Furnish" Information to Thieves.

FCRA applies only to the "furnishing of consumer reports." 15 U.S.C. § 1681e(a). Plaintiff's "consumer report" theory fails for the additional reason that she has not alleged that the banks' approvals of their customers' transactions were furnished to the data thieves. Plaintiff

4

alleges only that "the PII of Plaintiff and Class members was accessed by data thieves[.]" (Am. Compl. ¶ 33.) But plaintiff's definition of "PII" does not include the bank approvals that plaintiff now claims makes the information a "consumer report" under FCRA. (*Id.* ¶ 14.)

Nor does plaintiff address any of Whole Foods's citations on this point, all of which hold that no furnishing occurs when a thief steals the information. Instead, plaintiff relies solely on *Andrews v. TRW, Inc.*, 225 F.3d 1063, 1067 (9th Cir. 2000), *rev'd*, 534 U.S. 19 (2001). (Opp. Br. 13.) But the furnishing in *Andrews* was undisputed because there the defendant affirmatively sent the credit information at issue. *Id*. at 1065. *Andrews* is thus consistent with the cases Whole Foods cited that restrict the word "furnish" to "the active transmission of information to a third-party rather than a failure to safeguard the data." *In re Experian Data Breach Litig.*, 2016 WL 7973595, at *2 (C.D. Cal. Dec. 29, 2016) (quotation omitted). Here, plaintiff alleges merely that Whole Foods "failed to properly safeguard" information (Am. Compl. ¶¶ 22, 33), which does not constitute "furnishing" under FCRA as a matter of law.

Finally, plaintiff speculates that the security incident "may have occurred from an intentional act of a Whole Foods employee." (Opp. Br. 13.) But even if this unsupported—and indeed unalleged—speculation proved correct, courts refuse to hold that a company furnished information under FCRA when the real culprit is a rogue employee. *See, e.g.*, *Holmes v. Countrywide Fin. Corp.*, 2012 WL 2873892, at *16 (W.D. Ky. July 12, 2012) (allegations that Countrywide employee sold personal information from his employer's database for $70,000 insufficient to establish furnishing; "No coherent understanding of the words 'furnished' or 'transmitted' would implicate Countrywide's action under the FCRA.").

**C.   Plaintiff Has Not Adequately Alleged a Willful FCRA Claim.**

Plaintiff asks the Court to allow a claim for a willful violation of FCRA to proceed despite the fact that (1) no court anywhere has allowed a FCRA claim to proceed against a retailer victimized by a data breach, and (2) several courts have held that asserting a FCRA claim under these circumstances is frivolous. (*See* authorities at Br. 10.) Plaintiff cannot plausibly contend that Whole Foods willfully or recklessly violated FCRA here. Thus, at minimum, plaintiff's willfulness claim should be dismissed.

## II. PLAINTIFF'S STATE LAW CLAIMS FAIL.

### A. Plaintiff Lacks Standing Because She Suffered No Injury in Fact.

Plaintiff does not allege that her payment card information actually was stolen or that anyone has attempted to use it to make fraudulent charges. Rather, she merely alleges an increased risk of financial fraud and that she *may* decide to replace her card in the future. (Opp. Br. at 18-19.) But Article III's standing requirements demand more—a concrete, particularized, and actual or imminent injury. *Clapper v. Amnesty Int'l, USA*, 568 U.S. 398, 409 (2013).

Plaintiff offers up only one case, *Attias v. Carefirst, Inc.*, 865 F.3d 620 (D.C. Cir. 2017), in support of her position. But she ignores the wide range of authority holding that, without more, the mere increased risk of fraud resulting from hackers having had access to payment card information does not allege an injury in fact. *See, e.g.*, *In re SuperValu, Inc.*, 870 F.3d 763, 769-71 (8th Cir. 2017) (plaintiffs failed to allege "'certainly impending' or 'substantial risk' of identity theft as a result of the data breaches purportedly caused by defendants' deficient security practices"); *Beck v. McDonald*, 848 F.3d 262, 275 (4th Cir. 2017) (same); *In re Zappos.com, Inc.*, 108 F. Supp. 3d 949, 957-59 (D. Nev. 2015) (same); *Fernandez v. Leidos, Inc.,* 127 F. Supp. 3d 1078, 1087 (E.D. Cal. 2015) (same).

*Attias* is distinguishable in any event. In addition to payment card information, it involved the theft of far more personally identifiable information—including Social Security numbers, birth dates, and health insurance identification numbers—all of which substantially increased the likelihood of successful identity theft or financial fraud. 865 F.3d at 628; *see also Supervalu*, 870 F.3d at 770-71 (unlike Social Security number theft, "there is little to no risk that anyone will use [payment] card information stolen in these data breaches to open unauthorized accounts . . . , which is the type of identity theft generally considered to have a more harmful direct effect on consumers."). In contrast, the only potential injury to plaintiff here is an unauthorized payment card charge that, according to industry rules, she would be entitled to reimbursement for in any event. (Br. 11 n.4.)

Plaintiff argues that she has standing to pursue her federal and state law claims because she has alleged a violation of FCRA. Whole Foods acknowledged in its opening brief that it is

not challenging plaintiff's standing to assert her FCRA claim. (Br. 11 n.3 (citing *Robins v. Spokeo, Inc.*, 867 F.3d 1108 (9th Cir. 2017).)  But the fact that plaintiff has federal statutory standing under *Spokeo* does not satisfy her burden of proving standing for each of her state law claims. *WildEarth Guardians v. U.S. EPA*, 759 F.3d 1064, 1070 (9th Cir. 2014) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)).[2]

Plaintiff argues that simply contending Whole Foods violated certain Nevada statutes is sufficient to "establish[] her concrete harm" for standing purposes. (Opp. Br. at 17-18.)  But the mere existence of an alleged state statutory cause of action does not, on its own, satisfy Article III standing. *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2667 (2013) (The "fact that a State thinks a private party should have standing to seek relief for a generalized grievance cannot override" Article III); *Ross v. AXA Equitable Life Ins. Co.*, 115 F. Supp. 3d 424, 434 (S.D.N.Y. 2015) (same); *BCC Merch. Sols., Inc. v. Jet Pay LLC*, 129 F. Supp. 3d 440 (N.D. Tex. 2015) (same).

Courts have specifically held that data-breach plaintiffs who have not alleged the misuse of their personally identifiable information cannot remedy their lack of injury by asserting a violation of state statutory law. *See, e.g.*, *In re Cmty. Health Sys., Inc.*, 2016 WL 4732630, at *17 (N.D. Ala. Sept. 12, 2016) (statute statutes "do not provide a separate basis for Article III standing"); *Khan v. Children's Nat'l Health Sys.*, 188 F. Supp. 3d 524, 534 (D. Md. 2016) (state statutory violations cannot "manufacture" Article III standing).  Because plaintiff has alleged only the possibility of harm in the future, the same result applies here.

**B.     The Economic Loss Rule Bars Plaintiff's Negligence Claim.**

Plaintiff admits that, under the economic loss rule, "unintentional tort damages are barred when a plaintiff seeks recovery of 'purely economic losses.'" (Opp. Br. 19 (quotation omitted).) She also concedes that the Nevada courts have carved out only two categories of unintentional torts—certain types of negligent misrepresentation claims and most professional malpractice claims—from the bar on recovery of economic damages. (*Id.*)

---

[2] Plaintiff incorrectly relies on *In re Horizon Healthcare Services, Inc., Data Breach Litigation*, 846 F.3d 625, 629 (3d Cir. 2017), for the proposition that FCRA standing also confers standing on state law claims. (Opp. Br. 16.)  In fact, *Horizon Healthcare* simply states that a plaintiff's assertion of a FCRA violation gives her standing to assert a FCRA claim.

Plaintiff now asks this Court to create an entirely new exception to Nevada's economic loss rule on the ground that a "special relationship" exists between Whole Foods and the customers who buy groceries there. (Opp. Br. 20.) But plaintiff does not point to any Nevada case law that would support creating a new fiduciary (or fiduciary-like) relationship between retailers and their customers. Moreover, plaintiff did not plead a special relationship in her complaint, much less allege any facts that would give rise to such a relationship. *Beckman v. Match.com, LLC*, 2017 WL 1304288, at *3 (D. Nev. Mar. 10, 2017) (dismissing negligence claim because no special relationship existed between customer and online retailer).

"Special relationships" are those in which "the complaining party imparts special confidence in the defendant and the defendant reasonably knows of that confidence." *Peri & Sons Farms, Inc. v. Jain Irrigation, Inc.*, 933 F. Supp. 2d 1279, 1292 (D. Nev. 2013) (citation omitted). Nevada courts have carefully limited these relationships of "special confidence" to attorneys and clients, trustees and beneficiaries, insurers and insureds, and a few select others. *See, e.g., id.*; *Martin v. Sears, Roebuck & Co.*, 899 P.2d 551, 555 (Nev. 1995). Moreover, courts have rejected attempts to extend special relationships to retailers or transactions involving the sale of products. *Peri & Sons Farms*, 933 F. Supp. 2d at 1292 ("[S]elling an alleged defective product is not enough to support the required relationship."); *Walters v. Pella Corp.*, 2015 WL 2381335, at *10 (D.S.C. May 19, 2015) (same; applying Nevada law); *Beckman*, 2017 WL 1304288, at *3 (no special relationship between customer and online retailer); *see also Guilfoyle v. Olde Monmouth Stock Transfer Co.*, 335 P.3d 190, 198 (Nev. 2014) (no special relationship between stockholder and stock transfer agent).

Plaintiff simply has not alleged any relationship between her and Whole Foods that remotely resembles the kinds of special relationships previously recognized under Nevada law. As a result, she is left to argue that Nevada Revised Statute § 603A, which adopted certain security measures in connection with the handling of payment card information, somehow creates a special relationship of trust and confidence between all retailers and their customers. (Opp. Br. 20.) But this statute does not even confer a private right of action to consumers whose personal information is compromised, let alone legislate a special relationship of trust and

8

confidence between retailers and their customers.  In fact, the only private right of action available under the statute allows retailers—not customers—to sue the data thieves who unlawfully obtain personal information from the company's records.  NRS § 603A.900.

Plaintiff next argues that "Whole Foods erroneously restricts the scope of [her] claimed recovery on her negligence claim" to economic losses.  (Opp. Br. 19.)  Plaintiff does not contest that her alleged "overpayment" for goods that incorporated the cost of adequate data security is an economic loss.  (*Id.*)  Instead, in an attempt to cobble together non-economic losses, plaintiff claims that she also was "damaged because Whole Foods failed to inform plaintiff and all Subclass members of the heightened risk of harm, and deprived them of a statutory benefit provided by the Nevada legislature, which can never be recovered." (*Id.* at 19-20 (footnote omitted).)  But plaintiff does not explain how these nebulous theories amount to personal injury or property damages that would exempt her negligence claim from the economic loss rule, or even how they are recoverable damages at all.  *See Terracon Consultants W., Inc. v. Mandalay Resort Grp.*, 206 P.3d 81, 90 (Nev. 2009) ("[T]he economic loss doctrine cuts off tort liability when no personal injury or property damage occurred[.]").

Finally, plaintiff cites to an unpublished Nevada Supreme Court decision, *Lopez v. Javier Corral, D.C.*, 2010 WL 5541115, at *4 (Nev. Dec. 20, 2010), for the proposition that the "policy considerations behind the economic loss doctrine" do not apply when no contract remedy is available.[3]  But plaintiff does not contend that she has no contract remedy available here.  Indeed, under her contractual agreement with the bank that issued her payment card, she is entitled to reimbursement of any fraudulent charges on her card.  (Br. at 11 n.4.)  *See also SELCO Cmty. Credit Union v. Noodles & Co.*, 267 F. Supp. 3d 1288, 1293-96 (D. Colo. 2017) (describing "web of interrelated agreements" between and among cardholders and their issuing banks, merchants, and payment cards; "Visa and MasterCard require [issuing] banks to hold their customers harmless for most types of fraudulent transactions made with their cards.").  Moreover, the non-binding (and improperly cited) decision in *Lopez* is distinguishable in any

---

[3] Nevada Rule of Appellate Procedure 36(c)(3) does not permit litigants to cite to unpublished Nevada Supreme Court decisions prior to January 1, 2016.

9

event because the plaintiff there suffered non-economic damages that made the economic loss rule inapplicable, and because his economic damages were properly recoverable under his intentional tort claims. *Javier*, 2010 WL 5541115, at *4; *see also Bank of Am. v. Bailey*, 2016 WL 3410174, at *5 (D. Nev. June 15, 2016) ("The economic loss doctrine does not bar intentional tort claims.").

### C. Plaintiff's Consumer Fraud Claim Fails.

Plaintiff argues that Whole Foods violated Nevada Revised Statute § 598.0917(7) prohibiting "bait and switch" advertising. But nowhere in her complaint does plaintiff allege that Whole Foods advertised its data security policies, or that those advertisements lured her to the store. (*See* Am. Compl. ¶¶ 35-38.) *See also Rimini St., Inc. v. Oracle Int'l Corp.*, 2017 WL 5158658, at *10 (D. Nev. Nov. 7, 2017) (defining "bait and switch" as "sales practice whereby a merchant advertises a low-priced product to lure customers into the store only to induce them to buy a higher-priced product") (quotation omitted).

Consumer fraud claims like these "are subject to Rule 9(b)'s heightened pleading requirements." *Allstate Ins. Co. v. Belsky*, 2017 WL 7199651, at *7 (D. Nev. Mar. 31, 2017) (citing *Brown v. Kellar*, 636 P.2d 874, 874 (Nev. 1981)) (dismissing consumer fraud claim). And plaintiff utterly fails to allege the "time, place, and manner of each act of fraud" here. *See Bonner v. Specialized Loan Servicing LLC*, 2011 WL 1199998, at *3 (D. Nev. Mar. 28, 2011).

Plaintiff next argues she has adequately pleaded that Whole Foods knowingly violated federal and state statutes relating to the sale of goods or services. *See* NRS § 598.0923(3). To meet this claim, plaintiff must "establish that [Whole Foods] intentionally circumvented the requirements of [a] statute." *Sobel v. Hertz Corp.*, 698 F. Supp. 2d 1218, 1230 (D. Nev. 2010) (dismissing consumer fraud claim), *rev'd in part on other grounds*, 674 F. App'x 663 (9th Cir. 2017) (affirming dismissal of consumer fraud claim). But plaintiff's complaint is devoid of any allegations that Whole Foods knowingly violated a federal or state statute.

Plaintiff claims that a single word in her 19-page complaint satisfies her pleading burden under NRS § 598.0923(3). (Opp. Br. 21 (citing Am. Compl. ¶ 32 ("On information and belief . . . [Whole Foods] *willfully*, or at least negligently, failed to enact reasonable procedures[.]")

10

(emphasis added)).) But this allegation, made "on information and belief" and couched in the alternative, does not state that Whole Foods knowingly violated a federal or state statute. Moreover, this allegation relates only to plaintiff's claim that "Defendants' Conduct Violated the FCRA" (id. at page 6), and, as set forth above, FCRA does not apply to this case at all.

### III. THIS COURT LACKS PERSONAL JURISDICTION OVER WHOLE FOODS MARKET, INC.

Plaintiff does not dispute the many cases Whole Foods Market, Inc. (WFMI) cited for the proposition that this Court has no jurisdiction over an out-of-state holding company. (Br. 4-6.) Nor does she quarrel with the evidence Whole Foods offered in the affidavit of Timothy Horn, which demonstrates that WFMI is headquartered and incorporated in Texas, conducts no business in Nevada, and is merely a "holding company that owns shares of other operating entities." (Br. at Ex. A ¶¶ 3-7.) Horn further attested without any factual dispute from plaintiff that "[e]ach of WFMI's subsidiaries maintains its own independent corporate, partnership, or limited liability company status, identity, and structure." (*Id.* ¶ 11); *see also In re W. States Wholesale Nat. Gas Antitrust Litig.*, 2007 WL 4284759, at *5 (D. Nev. Nov. 28, 2007) ("[F]or personal jurisdiction purposes, a court may not assume the truth of allegations in a pleading which are contradicted by affidavit.") (citations and quotations omitted).

Plaintiff's sole citation, to *Pryor v. Metropolitan Life Insurance Company*, 2014 WL 12593994 (D.N.M. Oct. 21, 2014), is readily distinguishable because it analyzed personal jurisdiction in the context of an ERISA claim, which authorizes nationwide service of process. *Id.* at *2. Thus, under the Tenth Circuit law applicable there, "the personal jurisdiction analysis . . . does not hinge in large part on minimum contacts." *Id.* at *4 (citing *Quarles v. Fuqua Indus., Inc.*, 504 F.2d 1358, 1364-65 (10th Cir. 1974)). Indeed, the *Pryor* court made clear that under "a standard 'minimum contacts' analysis," the outcome may have been different. *Id.*

This is not an ERISA action, and FCRA does not provide for nationwide service of process. Thus, the traditional minimum contacts analysis applies. Under that analysis, an out-of-state holding company that conducts no business in Nevada cannot be hauled into court there.

## IV. THE COURT SHOULD DENY PLAINTIFF LEAVE TO AMEND.

In a last-ditch effort, plaintiff asks for leave to amend in the event the Court finds her allegations insufficient to state a claim. Plaintiff had the opportunity under Fed. R. Civ. P. 15(a)(1) to amend her complaint as of right within 21 days of Whole Foods's motion to dismiss, but she did not do so. And, for the reasons set forth above, any amendment of the complaint would be futile in any event. *Indian Homes Programs, LLC Series III v. Green Tree Servicing, LLC*, 2015 WL 5132456, at *2 (D. Nev. Sept. 1, 2015) ("'[F]utile amendments should not be permitted.'") (quoting *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 188 (9th Cir.1987)).

No amendment to the complaint could turn Whole Foods into a consumer reporting agency that furnished consumer reports under FCRA. Nor would any amendments take her negligence claim outside the scope of the economic loss rule or transform her garden-variety purchase into a nefarious bait-and-switch advertising scheme. Accordingly, this Court should deny plaintiff's request for leave to amend.

## CONCLUSION

For all these reasons, this Court should grant Whole Foods's motion to dismiss.

DATED this 16th day of February, 2018.

By: */s/ Christopher R. Miltenberger*
MARK E. FERRARIO, ESQ. (Bar No. 1625)
CHRISTOPHER R. MILTENBERGER (Bar No. 10153)
**GREENBERG TRAURIG, LLP**
3773 Howard Hughes Parkway, Suite 400 North
Las Vegas, Nevada 89169

DANIEL R. WARREN, ESQ. *pro hac vice*
SCOTT C. HOLBROOK, ESQ. *pro hac vice*
DANTE MARINUCCI, ESQ. *pro hac vice*
**BAKER & HOSTETLER LLP**
Key Tower
127 Public Square, Suite 2000
Cleveland, OH 44114-1214

ANN YACKSHAW, ESQ. *pro hac vice*
**BAKER & HOSTETLER LLP**
200 Civic Center Drive, Suite 1200
Columbus, Ohio 43215

*Attorneys for Defendants Whole Foods Market, Inc.; Whole Foods Market Group, Inc.; Mrs. Gooch's Natural Food Markets, Inc., and WFM Southern Nevada, Inc.*

GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway, Suite 400 North
Las Vegas, Nevada 89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5(b), I hereby certify that on the 16th day of February 2018, a true and correct copy of the foregoing was filed electronically via the Court's CM/ECF system. Notice of filing will be served on all parties by operation of the Court's EM/ECF system, and parties may access this filing through the Court's CM/ECF system.

*/s/ Andrea Lee Rosehill*
An employee of GREENBERG TAURIG, LLP